Liliana CARDENAS, on Behalf of Herself and All Other Similarly Situated California Residents, Plaintiff,

v.

NBTY, INC., a Delaware corporation and Rexall Sundown, Inc., a Florida corporation, Defendants.

No. CIV. S–11–1615 LKK/CKD.

United States District Court, E.D. California.

May 4, 2012.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Charles C. Sweedler, PHV, Howard J. Sedran, PHV, Keith J. Verrier, PHV, Levin Fishbein Sedran and Berman, Philadelphia, PA, Patricia N. Syverson, Elaine A. Ryan, PHV, Lindsey Gomez–Gray, PHV, Bonnett Fairbourn Friedman & Balint, Phoenix, AZ, Stewart Weltman, PHV, Futterman Howard Ashley & Weltman, P.C., Chicago, IL, for Plaintiff.

David Ryan Carpenter, Los Angeles, CA, Kara L. McCall, PHV, Chicago, IL, for Defendants.

*ORDER*

LAWRENCE K. KARLTON, Senior District Judge.

This class action alleges that Defendants NBTY Inc. ("NBTY") and Rexall Sundown Inc. ("Rexall") deceptively market and sell the Osteo Bi–Flex line of joint health dietary supplements without support for the efficacy representations made about those products. Plaintiff Liliana Cardenas, on behalf of herself and other similarly situated consumers of the Osteo Bi–Flex products, alleges violations of California's Consumers Legal Remedies Act and its Unfair Competition Law, and also allege breach of express warranty.

Presently before the court is Defendants' motion to dismiss Plaintiff's second amended complaint. *See* Defs' Mot., ECF No. 26. For the reasons provided below, the court denies Defendants' motion to dismiss.

## I. BACKGROUND

### A. Plaintiff's Complaint[1]

Within the last year and a half, Plaintiff Liliana Cardenas saw Defendants' representations by reading the front, back, and sides of the Osteo Bi–Flex Regular Strength label at a Rite Aid store in Roseville, California. Pl's Second Am. Compl., ECF No. 25, at 4. Plaintiff Cardenas "relied on every single one of Defendants' renewal and rejuvenation representations" and purchased the Osteo Bi–Flex product "to relieve her joint pain." *Id.* The Osteo Bi–Flex Regular Strength that Plaintiff

---

1. These facts are taken from the allegations in the Plaintiffs' Second Amended Complaint, ECF No. 25, unless otherwise specified. The allegations are taken as true for purposes of this motion only. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

purchased and took as directed did not help to promote mobility, renew cartilage, maintain healthy connective tissue, or improve joint comfort, as represented. *Id.* As a result, Plaintiff suffered injury in fact and lost money. *Id.*

Since 1996, Defendants have developed, manufactured, marketed, distributed, and sold a line of joint supplements under the Osteo Bi–Flex brand name, including: (1) Osteo Bi–Flex One Per Day; (2) Osteo Bi–Flex Triple Strength; (3) Osteo Bi–Flex Double Strength; (4) Osteo Bi–Flex Triple Strength with Vitamin D; (5) Osteo Bi–Flex MSM; (6) Osteo Bi–Flex Energy Formula; (7) Osteo Bi–Flex Regular Strength; and (8) Osteo Bi–Flex Advanced. *Id.* at 5.

The Osteo Bi–Flex products are sold in a number of major food, drug, and mass retail outlet stores in California, including Wal–Mart, Costco Wholesale, Sam's Club, Rite–Aid, Target, and Walgreens. *Id.* The Osteo Bi–Flex products are available in 30, 75, 80, 120, and 150 count bottles, retailing for approximately $19.99 to $44.99. *Id.*

According to Plaintiff, Defendants have consistently conveyed the message to consumers throughout California that Osteo Bi–Flex will help to "promote mobility," "renew cartilage," "maintain healthy connective tissue," and improve joint comfort by taking the recommended number of tablets each day. *Id.* at 6.

According to Plaintiff, Defendants represent that the claimed health benefits are achieved through the combination of ingredients in the products. *Id.* The primary active ingredient—glucosamine hydrochloride—is in all the Osteo Bi–Flex products and is an amino sugar that the body produces and distributes in cartilage and other connective tissue. *Id.* Plaintiff asserts that there is no competent and reliable scientific evidence that taking glucosamine—let alone through oral administration—results in the body metabolizing it into something that helps to promote mobility, renew cartilage, maintain healthy connective tissue or improve joint comfort. *Id.* Clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal or rejuvenation. *Id.*

The Osteo Bi–Flex products also contain Defendants' 5–LOXIN Advanced, which consists of a concentrated extract of *Boswellia Serrata* ("AKBA"). Osteo Bi–Flex Regular Strength is the only product without AKBA. Although Defendants claim that AKBA results in "improvement in joint comfort within 7 days," there is no competent and reliable scientific evidence that taking AKBA—let alone through oral administration—helps to "promote mobility," "renew cartilage," "maintain healthy connective tissue," or improve joint comfort. Clinical cause and effect studies have been unable to confirm a cause and effect relationship between AKBA supplementation and joint renewal or rejuvenation.

The Osteo Bi–Flex products also contain lesser amounts of the following other ingredients: chondroitin sulfate, which is in all of the Osteo Bi–Flex products except for Osteo Bi–Flex One Per Day; methylsulfonylmethane, which is in all of the products except for Osteo Bi–Flex One Per Day and Osteo Bi–Flex Regular Strength; hyaluronic acid, which is in all of the products except for Osteo Bi–Flex Advanced, Osteo Bi–Flex One Per Day, and Osteo Bi–Flex Regular Strength; and vitamin D, vitamin C, manganese, boron, and collagen. *Id.* at 7–8. There is no competent and reliable scientific evidence that taking chondroitin, methylsulfonylmethane, hyaluronic acid, vitamin D, vitamin C, manganese, boron, or collagen—let alone through oral administration—helps to "promote mobility," "renew cartilage," "maintain healthy connective tissue," or improve joint comfort. *Id.* Clinical cause and effect

studies have found no causative link between chondroitin, methylsulfonylmethane, hyaluronic acid, vitamin D, vitamin C, manganese, boron, or collagen supplementation and joint renewal or rejuvenation. *Id.*

The packages for the Osteo Bi–Flex products reference two studies supporting the Defendants' representation that the product "shows improvement in joint comfort," but no information is included to enable customers to locate and review the studies. *Id.* at 8. Defendants do not have competent and reliable scientific evidence that any of the ingredients in their Osteo Bi–Flex products, when taken alone or in combination, are effective at helping provide joint renewal or rejuvenation. *Id.* at 10. Numerous clinical studies have resulted in a finding of no efficacy for the ingredients in the Osteo Bi–Flex products and the prevention of joint degeneration or relief from joint discomfort. *Id.*

As noted, plaintiff alleges violations of California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200, et seq., and its Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq., as well as breach of express warranty. *Id.* at 14–18. Plaintiff seeks, *inter alia*, compensatory damages, restitution and disgorgement of Defendants' revenues, injunctive relief, and statutory and punitive damages. *Id.* at 18–19.

## B. Defendants' Motion to Dismiss

Defendants make, *inter alia*, the following arguments. As a preliminary matter, Defendants argue that Plaintiff lacks standing to pursue claims, including putative class claims, as to the Osteo Bi–Flex products she did not purchase and advertising she did not view. *See* Defs' Mot., ECF No. 26, at 7–11. Second, Defendants argue that Plaintiff has failed to allege sufficient facts to support any of her claims because: (1) Plaintiff must allege and ultimately prove that the challenged marketing is *actually* false or misleading, and claims that the representation merely lacks substantiation are insufficient, *id.* at 11–15; and (2) Plaintiff makes conclusory and unspecified allegations regarding clinical cause and effect studies, which are insufficient to show what is specifically false or misleading about Defendants' representations, why those representations are false, and what facts Defendants were purportedly required to disclose, as required by Federal Rules of Civil Procedure 8 and 9(b), *id.* at 15–18. Finally, Defendants request that the case be dismissed with prejudice because "Plaintiff has already amended her complaint twice, and the claims remain fundamentally defective." [2] *Id.* at 20.

In opposing Defendants' motion to dismiss, Plaintiff argues, *inter alia*, that: (1) Plaintiff has standing to assert claims based on the advertised representations pertaining to all of the Osteo Bi–Flex products and Defendants' argument that Plaintiff lacks standing "is a premature and erroneous Rule 23 typicality argument, made under the guise of a standing argument," *see* Pl's Opp'n, ECF No. 29, at 5–9; (2) Defendants are improperly char-

---

**2.** Plaintiff filed her initial complaint on June 14, 2011. *See* Pl's Compl., ECF No. 1. On July 5, 2011, before the Defendant responded to Plaintiff's complaint, the parties stipulated that Plaintiff would file a First Amended Complaint, and that Defendants would be given an extension of time to file a response to the First Amended Complaint. *See* Stip. & Order, ECF No. 8. On July 25, 2011, Plaintiff filed her First Amended Complaint. *See* Pl's First Am. Compl., ECF No. 10. On August 24, 2011, Defendants filed a motion to dismiss Plaintiff's first amended complaint. *See* Defs' Mot., ECF No. 19. In response to Defendants' motion to dismiss, Plaintiff filed the second amended complaint currently at issue. *See* Pl's Second Am. Compl., ECF No. 25.

acterizing Plaintiff's claims as "lack of substantiation" or "nondisclosure" claims, when Plaintiff, in fact, is alleging claims for false and deceptive advertising, *id.* at 9–10; (3) even if Plaintiff's claims may be characterized as lack of substantiation claims, it remains "actionable conduct when a manufacturer makes false and misleading health benefit claims about a product without having competent scientific proof supporting those claims," *id.* at 10–11; (4) Plaintiff's UCL and CLRA claims are not predicated on common law fraud, and thus, Rule 8(a) (as opposed to Rule 9(b)) pleading standards apply and Plaintiff has satisfied those standards, *id.* at 11–13; and (5) even if the court determines that Plaintiff's complaint does "sound in fraud," Plaintiff has satisfied Rule 9(b) pleading requirements, *id.* at 14–15.

## II. STANDARDS FOR A MOTION TO DISMISS

### A. Dismissal of claims governed by Federal Rule of Civil Procedure 8(a)

A Federal Rule of Civil Procedure 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules. In general, these requirements are established by Federal Rule of Civil Procedure 8, although claims that are "grounded in fraud" or "sound in fraud" must meet the requirements provided by Federal Rule of Civil Procedure 9(b). *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103–04 (9th Cir. 2003).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

R.Civ.P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id.* at 679, 129 S.Ct. 1937. *Iqbal* and *Twombly* therefore prescribe a two step process for evaluation of motions to dismiss. The court first identifies the nonconclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." *Id.; Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[3]

"Plausibility," as it is used in *Twombly* and *Iqbal,* does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 556, 127

---

**3.** As discussed below, the court may consider certain limited evidence on a motion to dismiss. As an exception to the general rule that non-conclusory factual allegations must be accepted as true on a motion to dismiss, the court need not accept allegations as true when they are contradicted by this evidence. *See Mullis v. United States Bankr. Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987), *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987).

S.Ct. 1955). A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990).

## B. Dismissal of Claims Governed by Federal Rule of Civil Procedure 9(b)

A Rule 12(b)(6) motion to dismiss may also challenge a complaint's compliance with Federal Rule of Civil Procedure 9(b). *See Vess*, 317 F.3d at 1107. This rule provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Rule 9(b) requires fraud claims to be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged, so that they can defend against the charge and not just deny that they have done anything wrong. *Id.* (citing *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). That is, the plaintiff must specifically set forth what is false or misleading about a statement, and why it is false. *Vess*, 317 F.3d at 1106 (citing *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir.1994)).

## III. ANALYSIS

### A. Osteo Bi–Flex Product Packaging

When ruling on a motion to dismiss, the court may consider a variety of documents in addition to the complaint. For example, the court may consider documents attached to the complaint. *Durning v. First Boston, Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987), *cert. denied*, 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987). The court may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir.2002). Attached to their motion to dismiss, Defendants have included copies of product packaging for the eight Osteo Bi–Flex products currently at issue in this dispute. Because the packaging serves as a basis for Plaintiff's allegations and Plaintiff does not contest their authenticity, the court here considers the Osteo Bi–Flex product packaging in ruling on Defendants' motion to dismiss. *See* Defs' Mot., ECF No. 26, Exs. A–H.

### B. Standing

To establish Article III standing, a plaintiff must have an injury in fact, which is traceable to the defendant's acts and redressable by a court decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Injury in fact results from the invasion of a legally protected interested which is concrete and particularized, as well as actual or imminent. *Id.* at 560, 112 S.Ct. 2130 (citations omitted). In a class action, standing is satisfied if "at least one named plaintiff meets the requirements." *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007).

■ Here, Plaintiff alleged that she read the front, back, and sides of the Osteo Bi–Flex Regular Strength label at a Rite Aid store in Roseville, California, and lost

money on the ineffective Osteo Bi–Flex product that she would not have purchased but for the representations thereon. Plaintiff seeks, among other remedies, compensatory damages. These allegations constitute injury in fact and suffice to establish that the Plaintiff has Article III standing, at least as to the Osteo Bi–Flex Regular Strength product that Plaintiff purchased and the representations on the packaging of that product upon which she relied.

■■■ A plaintiff alleging a UCL claim must satisfy both Article III standing requirements and UCL standing requirements. *See Birdsong v. Apple, Inc.,* 590 F.3d 955, 960 n. 4 (9th Cir.2009). A UCL plaintiff with standing is a person who has (1)· suffered injury in fact and (2) lost money or property as a result of the unfair competition. *Degelmann v. Advanced Medical Optics, Inc.,* 659 F.3d 835, 839 (9th Cir.2011) (citing Cal. Bus. & Prof. Code § 17204). That is, UCL plaintiffs are required to show that they have lost money or property sufficient to constitute an "injury in fact" under Article III of the Constitution. *Id.* (citing *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203–04 (9th Cir.2010); *Birdsong,* 590 F.3d at 959–60). Thus, a UCL plaintiff must have Article III standing in the form of economic injury. In the instant case, Plaintiff's allegation that she lost money on the ineffective Osteo Bi–Flex product is sufficient to meet the standing requirement of economic injury under the UCL, as to the Osteo Bi–Flex Regular Strength product that she purchased.

■■ Under the CLRA, an action may be brought by: "Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 …." Cal. Civ.Code § 1780(a). In order to have standing, a plaintiff must allege that he or she was

damaged by an alleged unlawful practice. *Johns v. Bayer Corp.,* No. 09–1935, 2010 WL 476688, at *4 (S.D.Cal. Feb. 9, 2010) (citing *Meyer v. Sprint Spectrum L.P.,* 45 Cal.4th 634, 638, 88 Cal.Rptr.3d 859, 200 P.3d 295 (2009)). Again, Plaintiff's allegation that she lost money due to Defendants' unlawful representations is sufficient to establish Plaintiff's standing to bring ·a claim under the CLRA for any misrepresentations she relied upon relating to the Osteo Bi–Flex Regular Strength product that she purchased.

It is less clear whether Plaintiff has standing to bring claims under the UCL and the CLRA as to the Osteo Bi–Flex products that she did not purchase and the advertising she did not view.

The court in *Bayer Corp.* provided, in dicta, that a plaintiff "cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon." *Bayer Corp.,* 2010 WL 476688, at *5. Some district courts in the Ninth Circuit have followed this view. *See, e.g., Carrea v. Dreyer's Grand Ice Cream, Inc.,* No. 3:10–cv–01044–JSW, 2011 WL 159380, at *3 (N.D.Cal. Jan. 10, 2011) (holding that plaintiff has standing to bring UCL and CLRA claims for the Drumstick ice cream products purchased, but dismissing plaintiff's claims for the Dibs ice cream product, which plaintiff never alleged he purchased or suffered a loss), *aff'd,* 475 Fed.Appx. 113, No. 11–15263, 2012 WL 1131526 (9th Cir. April 5, 2012) (unpublished) (declining to address the district court's standing determination); *Mlejnecky v. Olympus Imaging Am. Inc.,* No. 2:10–cv–2630, 2011 WL 1497096, at *4 (E.D.Cal. April 19, 2011) (Mendez, J.) (dismissing plaintiff's CLRA and UCL claims relating to a camera model that has the "same underlying defects" and used the same advertisements as the model she purchased, but for which she did not allege any economic injury).

Other recent court decisions, however, have applied a different approach when facing, in a class action, a named plaintiff's assertion of claims related to products that she did not buy. For example, in *Carideo v. Dell, Inc.,* the court upheld claims by the named plaintiffs for computer models that they had not purchased, but that were subject to the "same core factual allegations and causes of action." 706 F.Supp.2d 1122, 1134 (W.D.Wash.2010). And in *Hewlett–Packard v. Superior Ct.,* the court upheld class certification for UCL, CLRA, express warranty, and unjust enrichment claims relating to display failures in several models, even though the named plaintiff only purchased one of those models. 167 Cal.App.4th 87, 89–92, 83 Cal.Rptr.3d 836 (2008). While *Carideo* can be distinguished from the issues presented in this case because it does not address standing requirements as related to California law, and *Hewlett–Packard* can be distinguished from the issues here presented because the court in *Hewlett–Packard* was not analyzing standing issues, it is more difficult to dismiss or distinguish the court's holding in *Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524, 529–32 (C.D.Cal. 2011).

Similar to the instant case, in *Bruno,* the plaintiff filed a class action against the manufacturer and marketer of supplements alleging misrepresentations in violation of, *inter alia,* California's UCL and CLRA. In considering whether the plaintiff in *Bruno* had standing to bring claims arising from the defendants' gelcap product, when the plaintiff had only purchased the defendants' liquid product, the court noted that "treatises and the vast majority of persuasive authority indicate that ... the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequa-

cy of representation." *Id.* at 530 (citing *Greenwood v. Compucredit Corp.,* No. 4:08–cv–04878, 2010 WL 4807095, at *3 (N.D.Cal. Nov. 19, 2010); *Arevalo v. Bank of Am. Corp.,* 850 F.Supp.2d 1008, 1017 (N.D.Cal.2011); *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410, 423 (6th Cir. 1998) (holding that, because plaintiff had standing to sue for injury arising from his own benefit plan, his ability to represent class members with different benefit plans should be analyzed under Rule 23, not standing); 7AA Wright et al., Federal Practice and Procedure (3d 2005) § 1785.1).

The court here finds the reasoning of *Bruno* more persuasive than the reasoning provided by the dicta of *Bayer Corp.* and its progeny. Thus, the court determines that Plaintiff has standing to assert her UCL and CLRA claims based on her purchase of Osteo Bi–Flex Regular Strength and the product's more general representations that its line of Osteo Bi–Flex products, which ostensibly share many similarities in ingredients, "improve mobility," "improve joint comfort," and "support[ ] renewal of cartilage." The court will analyze solely under Rule 23 whether Plaintiff may be allowed to present claims on behalf of purchasers of the remaining Osteo Bi-Flex products.

### C. Applicability of Federal Rule of Civil Procedure 9(b)

■ Defendants argue that Plaintiff's claims sound in fraud and are, therefore, subject to the particularized pleading requirements of Rule 9(b).

■ The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir.2009) (citing *Vess,* 317 F.3d at 1102–05). While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may

nonetheless allege that the defendant engaged in fraudulent conduct. *Id.* (citing *Vess,* 317 F.3d at 1103). A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim, in which event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading as a whole must satisfy the particularity requirement of Rule 9(b). *Id.* (citing *Vess,* 317 F.3d at 1103–04).

■■■ To determine if the elements of fraud have been pleaded to state a cause of action, courts look to state law. *Kearns,* 567 F.3d at 1126 (citing *Vess,* 317 F.3d at 1105–06). The elements of a cause of action for fraud in California are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Id.* (citing *Engalla v. Permanente Med. Group, Inc.,* 15 Cal.4th 951, 974, 64 Cal. Rptr.2d 843, 938 P.2d 903 (Cal.1997)).

■■■ If the claim is grounded in fraud, the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b). *Kearns,* 567 F.3d at 1127 (citing *Vess,* 317 F.3d at 1103–04).

Plaintiff argues that her action does not sound in fraud, but instead, alleges claims of false and deceptive advertising. However, Plaintiff specifically asserts the elements of a cause of action for fraud in her CLRA claim. Specifically, in her CLRA claim, Plaintiff alleges that Defendants "fail[ed] to disclose material facts on the Osteo Bi–Flex product labels and packaging" (nondisclosure), "when they knew, or should have known, that the representations were unsubstantiated" (scienter). Pl's Second Am. Compl., ECF No. 25, at 17, ¶ 59. Plaintiff also asserts that she "relied on every single one of Defendants' renewal and rejuvenation representations" (justifiable reliance), and that she "suffered injury in fact and lost money" (resulting damage). *Id.* at 4, ¶ 8. Because Plaintiff alleges each of the elements of an action for fraud in her CLRA claim, the pleading of that claim, as a whole, must satisfy the particularity requirement of Rule 9(b).

Plaintiff does not, however, allege knowledge of falsity, or scienter, as part of her UCL claim. Plaintiff's UCL claim therefore does not "sound in fraud" and Rule 9(b) applies only insofar as Plaintiff makes specific averments of fraud in her UCL claim. *See Vess,* 317 F.3d at 1105 ("[I]n a case where fraud is not an essential element of a claim, only allegations fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).").

In the complaint as pled, however, it is difficult to distinguish between those averments in Plaintiff's UCL claim that are based on fraud, and those averments that are based on nonfraudulent conduct.[4] As part of Plaintiff's UCL claim, Plaintiff alleges that she and other class members "lost money as a result of these unlawful, unfair, and *fraudulent* practices." Pl's Second Am. Compl., ECF No. 25, at 15, ¶ 51 (emphasis added). Plaintiff characterizes the Defendants' representations as "fraudulent," apparently in reference to Defendants' false advertising generally, and not related to any of Defendants' statements in particular. Because the alleged fraudulence of Defendants' advertising is inseparable from any other averments made as part of Plaintiff's UCL

---

4. The court notes that not all claims of false advertising are necessarily grounded in fraud. *See Fraker v. Bayer Corp.,* No. 1:08–cv–01564, 2009 WL 5865687, at *9 (E.D.Cal. Oct. 6, 2009).

claim, the court determines that Plaintiff's UCL claim, as a whole, must meet the pleading standards of Rule 9(b).

## D. Sufficiency of Plaintiff's Complaint Under Rule 9(b).

 The court here determines that Plaintiff's complaint meets the pleading standards of Federal Rule of Civil Procedure 9(b). When taking Plaintiff's factual allegations as true and construing them in the light most favorable to Plaintiff, Plaintiff's allegations of the falsity of the Osteo Bi–Flex representations are sufficient to survive Defendants' motion to dismiss.

Plaintiff argues, and the court agrees, that the gravamen of her complaint asserts that "it is actionable conduct when a manufacturer makes false and misleading health benefit claims about a product without having competent scientific proof supporting those claims." Pl's Opp'n, ECF No. 29, at 11.

 Pursuant to Section 17500 of the California Business and Professions Code, it is unlawful to make and disseminate any statement that is "untrue or misleading, and which is known, or by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. § 17500. A statement is false or misleading if members of the public are likely to be deceived. *Fraker v. Bayer Corp.*, No. 1:08–cv–01564, 2009 WL 5865687, at *7 (E.D.Cal. Oct. 6, 2009) (citing *McCann v. Lucky Money, Inc.*, 129 Cal.App.4th 1382, 1388, 29 Cal.Rptr.3d 437 (4th Dist.2005) (internal citations omitted)). A "reasonable consumer" standard applies when determining whether a given claim is misleading or deceptive. *Id.* at *6. A "reasonable consumer" is "the ordinary consumer acting reasonably under the circumstances," and "is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture." *Id.*

Plaintiff refers to "clinical cause and effect studies" that "have found no causative link" between the individual ingredients contained in the Osteo Bi–Flex products and the benefits purported thereon.

Defendants' representations related to improved joint comfort, joint lubrication, and other joint benefits, appear to be based, at least in part, on the asserted efficacy of individual ingredients in their formulations in achieving joint benefits.

For example, the packaging for Osteo Bi–Flex One Per Day, Osteo Bi–Flex Double Strength, Osteo Bi–Flex Triple Strength, Osteo Bi–Flex Triple Strength with Vitamin D3, Osteo Bi–Flex Energy Formula, and Osteo Bi–Flex Advanced all indicate that an active ingredient in their formulations is "5–LOXIN Advanced," which, Defendants represent, "contains high concentrations of AKBA, which is an important Boswellic Acid for helping with joint flare-ups." *See, e.g.,* Defs' Mot., ECF No. 26, Exs. A–D, F. If Plaintiff's assertions are true, and "[c]linical cause and effect studies have been unable to confirm a cause and effect relationship between AKBA supplementation and joint renewal or rejuvenation," ECF No. 25, at 6–7, then it stands to reason that Defendants' representations that AKBA "help[s] with joint flare-ups" are actually false. Because Defendants bolster their overarching claims of joint benefits by referring to the importance and efficacy of a particular ingredient which, if Plaintiff is to be believed, has no actual joint benefits, then Defendants' overarching claims are most likely false as well. Thus, Plaintiff's cited clinical cause and effect studies regarding AKBA sufficiently provide Defendants notice of the parameters of their allegedly fraudulent conduct; based on the Plaintiff's allegations, the Defendants can adequately prepare a defense against the charge and not merely deny that they have done anything wrong.

Similarly, apparently as a basis for its overarching claims that Osteo Bi–Flex Regular Strength "improves mobility," "improves joint comfort," and "supports renewal of cartilage," the packaging for the regular strength product asserts that "[g]lucosamine ... helps to maintain the structural integrity of joints and connective tissues," and that "[c]hondroitin ... helps to lubricate and cushion joints while supporting the renewal of cartilage." *See* Defs' Mot., ECF No. 26, Ex. H. If, in fact, clinical cause and effect studies have found no causative link between glucosamine hydrochloride supplementation and joint renewal or rejuvenation, nor have clinical cause and effect studies found a causative link between chondroitin supplementation and joint renewal or rejuvenation, then Defendants' assertions regarding the benefits of glucosamine and chondroitin are most likely false. Because the purported joint benefits of the regular strength product are based on Defendants' assertions of the efficacy of the particular ingredients glucosamine and chondroitin, it is reasonable to infer that the regular strength product's asserted overarching benefits of improved mobility, improved joint comfort, and renewal of cartilage, are also false. Thus, the court finds that Plaintiff's cited clinical cause and effect studies are sufficiently specific to provide Defendants notice of what is allegedly false or misleading about the Osteo Bi–Flex representations, and why those representations are alleged to be false, as required by Rule 9(b).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 26, is DENIED.

IT IS SO ORDERED.