Rosemary QUINN and Alan Ducorsky, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

WALGREEN CO., Defendant.

No. 12 CV 8187(VB).

United States District Court, S.D. New York.

Aug. 7, 2013.

536

Douglas Gregory Blankinship, Todd S. Garber, Meiselman, Packman, Nealon, Scialabba & Baker P.C., White Plains, NY, for Plaintiffs.

Bradley Joseph Andreozzi, Chance Lee Cooper, Elizabeth V. Lopez, Emily Tancer Broach, Justin O. Kay, Marsha Jessica Indych, Drinker Biddle & Reath, LLP, New York, NY, for Defendant.

## *MEMORANDUM DECISION*

BRICCETTI, District Judge:

Plaintiffs Rosemary Quinn and Alan Ducorsky bring this putative class action on behalf of themselves and similarly-situated individuals who purchased from defendant Walgreen Co. ("Walgreens") certain dietary supplements that claim to "help rebuild cartilage." Plaintiffs allege these products do not perform as advertised because it is, in fact, impossible to "rebuild cartilage." Plaintiffs assert claims under New York and Connecticut consumer protection statutes, N.Y. Gen. Bus. Law § 349 and Conn. Gen.Stat. Ann. § 42–110a *et seq.*, as well as claims for breach of express warranty and unjust enrichment.

Walgreens has moved to stay this action under the "first-filed" rule pending the determination of a motion pending before the United States District Court for the Northern District of Illinois (Doc. # 10), and, alternatively, to dismiss the class action complaint pursuant to Rules 12(b)(1) and 12(b)(6). (Doc. # 13).

For the following reasons, the motion to stay is DENIED, and the motion to dismiss is GRANTED in part and DENIED in part.

The Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

## BACKGROUND

For purposes of deciding the pending motions, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of plaintiffs.

Walgreens sells a line of dietary supplements containing glucosamine and chondroitin (the "Glucosamine Supplements") in its stores throughout the country, including in New York and Connecticut. The labels of the Glucosamine Supplements claim the products "help rebuild cartilage." Defendant's line of Glucosamine Supplements consists of six different products that vary in formulation, strength, and quantity. Each of the Glucosamine Supplements includes glucosamine hydrochloride and chondroitin sulfate among its ingredients; however, each product also contains various other ingredients.

Four of the Glucosamine Supplements, "Glucosamine Chondroitin Complex Double Strength," "Glucosamine Chondroitin Complex Triple Strength," "Glucosamine Chondroitin Complex Triple Strength with Vitamin D," and "Glucosamine Chondroitin MSM Complex MSM Hyaluronic Acid," have labels that state: "Formulated to Help: ● With Joint Comfort ● Rebuild Cartilage & Lubricate Joints." That statement is qualified by the disclaimer: "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, care, or prevent any disease."

The labels of the other two Glucosamine Supplements, "Glucosamine Chondroitin Complex Advanced 2 Per Day" and "Glucosamine Chondroitin Advanced MSM," state: "Glucosamine & Chondroitin Help Rebuild Cartilage & Lubricate Joints." That representation is subject to the same disclaimer as the other products. The packaging of all six Glucosamine Supplements also contains a warranty promising "100% Satisfaction Guaranteed with all Walgreens Products or Your Money Back."

Plaintiffs contend defendant's claims that the Glucosamine Supplements "help rebuild cartilage" are false and deceptive

because it is "biologically impossible" to rebuild cartilage that has been lost or damaged. In support, plaintiffs cite to several scientific studies which plaintiffs contend confirm that neither glucosamine, chondroitin, nor any other supplement or ingredient can actually rebuild cartilage. Plaintiffs also cite to studies ostensibly finding that glucosamine and chondroitin are ineffective in treating osteoarthritis and other conditions. Plaintiffs acknowledge that at least two studies have found that ingestion of glucosamine may, in fact, affect the growth or deterioration of cartilage, but contend those studies are not credible because they are more than ten years old and were sponsored by a glucosamine supplement manufacturer.

In 2011, plaintiff Rosemary Quinn purchased Glucosamine Supplements at Walgreens stores in Scarsdale, New York, and Danbury, Connecticut. Quinn "read and reviewed" the representation on the label that the products would "help rebuild cartilage" before she purchased them. Quinn subsequently took the supplements, but her cartilage was not rebuilt, as it is "biologically impossible" to rebuild cartilage.

Also in 2011, plaintiff Alan Ducorsky purchased a Glucosamine Supplement at a Walgreens store in New York. Like Quinn, Ducorsky alleges he "read and reviewed" the representation that the product would "help rebuild cartilage" before he purchased it, and he subsequently consumed the supplement but his cartilage was not rebuilt. Plaintiffs contend they would not have purchased the Glucosamine Supplements had they known the products would not "help rebuild cartilage" as advertised.

Plaintiffs commenced this action on November 9, 2012. Walgreens now seeks a stay pending the disposition of a motion to dismiss pending in an earlier filed suit, *Guilin v. Walgreen Co.*, No. 11–07763 (N.D.Ill.). In the alternative, Walgreens moves to dismiss the complaint for failure to state a claim and because plaintiffs lack standing to pursue certain of their claims, pursuant to Rules 12(b)(1) and 12(b)(6).

## DISCUSSION

### I. *Motion to Stay*

#### A. *The Earlier Filed Action*

On November 1, 2011, approximately one year before the commencement in this case, *Ehrman v. Walgreen Co.*, No. 11–07763 (N.D.Ill.), was filed in the United States District Court for the Northern District of Illinois. On April 16, 2012, the court granted Ehrman's motion to withdraw as named plaintiff and substitute Luis Guilin as named plaintiff and alleged class representative. Guilin has subsequently filed several amended complaints, and his fourth amended complaint, filed October 10, 2012, is currently subject to a motion to dismiss filed by Walgreens on December 4, 2012. The motion is fully briefed, and a conference is scheduled for August 29, 2013.

The complaint in *Guilin* alleges Walgreens "markets, sells and distributes Glucosamine Chondroitin Complex, a line of ... dietary supplements" with "promises that [the products] will help build cartilage, lubricate joints and improve joint comfort." Guilin alleges the packaging for this line of supplements is deceptive because the products do not rebuild cartilage, lubricate joints, or improve joint comfort.

Guilin, who purchased the glucosamine product in California, asserts claims under various California consumer protection statutes. Additionally, pursuant to Rule 23, plaintiff seeks certification of a multi-state class against Walgreens for violations of the California consumer protection statutes, and similar consumer protection statutes in thirty-two other states, including New York and Connecticut.

### B. *Applicable Law*

 "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir. 2000). The first-filed rule is a well-settled principle in the Second Circuit, establishing that "[w]here there are two competing lawsuits, the first suit should have priority." *First City Nat'l Bank and Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989) (internal quotation marks omitted). The rule " 'embodies considerations of judicial administration and conservation of resources' by avoiding duplicative litigation and honoring the plaintiff's choice of forum." *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.,* 522 F.3d 271, 275 (2d Cir.2008) (quoting *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d at 79). More specifically, the rule is intended to "avoid duplication of judicial effort, avoid vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication." *Marshak v. Reed,* 13 Fed.Appx. 19, 19 (2d Cir.2001) (summary order).

 When applying the first-filed rule to assertedly duplicative actions, the court must carefully consider whether the suits are, in fact, duplicative, and must "not to be swayed by a rough resemblance between the two suits without assuring itself that beyond the resemblance already noted, the claims asserted in both suits are also the same." *Curtis v. Citibank, N.A.,* 226 F.3d at 136.

 Moreover, although the rule creates a general presumption that a first-filed suit has priority, that presumption is not "applied in a 'rigid' or 'mechanical' way." *Dornoch Ltd. v. PBM Holdings, Inc.,* 666 F.Supp.2d 366, 369 (S.D.N.Y. 2009) (quoting *Columbia Pictures Indus., Inc. v. Schneider,* 435 F.Supp. 742, 747 (S.D.N.Y.1977)). Rather, because "[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test," the district court is instead required to "consider the equities of the situation when exercising its discretion." *Naula v. Rite Aid of N.Y.,* 2010 WL 2399364, at *3 (S.D.N.Y. Mar. 23, 2010).

 "Although it is typically invoked in non-class contexts, the first-filed rule has been applied to class action suits filed by different plaintiff classes against the same defendant. In that setting, for the rule to apply, 'identical or substantially similar parties and claims [must be]' present in both courts." *Bukhari v. Deloitte & Touche LLP,* 2012 WL 5904815, at *3 (S.D.N.Y. Nov. 26, 2012) (quoting *Pippins v. KPMG LLP,* 2012 WL 1143010, at *2 (S.D.N.Y. Mar. 21, 2011) (internal quotation marks omitted)). "The decision whether or not to stay or dismiss a proceeding rests within a district court's discretion." *Hollinee Corp. v. Weyher,* 1992 WL 110989, at *5 (S.D.N.Y. May 4, 1992).

### C. *Analysis*

 Here, because this case presents neither identical issues nor identical parties as the *Guilin* action, the Court finds the first-filed rule does not apply. In this action, plaintiffs raise claims under New York and Connecticut law and seek certification of New York and Connecticut classes. Conversely, the plaintiff in *Guilin* purchased defendant's product in California and asserts claims under California law. Although the *Guilin* action also seeks certification of a multi-state class that could potentially encompass New York and Connecticut consumers, no nationwide class has, in fact, been certified in *Guilin.* Therefore, neither the parties nor the issues in this case are identical to those in *Guilin. See Bukhari v. Deloitte & Touche LLP,* 2012 WL 5904815, at *3

(For the first-filed rule to apply, there must be " 'essentially the same lawsuit involving the same parties and the same issues' [ ] filed in two different forums.") (quoting *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978)).

Importantly, Walgreens does not seek dismissal of this action or transfer of the action to the Northern District of Illinois, it merely seeks a stay pending the *Guilin* court's disposition of the pending motion to dismiss. However, the disposition of that motion cannot be dispositive of the case at bar. Whether the motion is granted or denied, this Court must still decide the motion to dismiss pending in *this case;* the decision of a district court in another district in a case involving different plaintiffs and different law certainly is not binding on this Court. Therefore, the Court finds "considerations of judicial administration and conservation of resources" do not counsel in favor of staying this case pending the disposition of the motion to dismiss pending in *Guilin. Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir.2008) (internal quotation marks omitted).

Accordingly, the motion for a stay is denied.

## II. *Motion to Dismiss*

### A. *Standard of Review*

#### 1. *Rule 12(b)(1)*

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson, & Cortese–Costa, P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir.2009) (internal quotation marks omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir.2011)

(internal quotation marks omitted). Once the question of jurisdiction has been raised, plaintiff bears the burden of establishing that subject matter jurisdiction exists by a preponderance of the evidence. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff ... but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir.2008) (internal citations and quotations omitted). The court may also refer to evidence outside the pleadings. *Makarova v. United States*, 201 F.3d at 113.

#### 2. *Rule 12(b)(6)*

"The function of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (internal quotation marks omitted). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 678, 129 S.Ct. 1937; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir.2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an enti-

tlement to relief." *Ashcroft v. Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937; *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 564, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

B. *Plaintiffs' Standing to Bring Claims Relating to Products They Did Not Purchase*

Walgreens moves to dismiss plaintiffs' claims relating to products they did not purchase for lack of standing pursuant to Rule 12(b)(1). Defendant argues that because the named plaintiffs purchased only one Glucosamine Supplement—Glucosamine Chondroitin Complex Triple Strength—they lack standing to assert claims relating to the five other Glucosamine Supplements manufactured and sold by defendant. The Court disagrees.

Standing is a prerequisite to bringing suit in federal court. The Supreme Court has held that constitutional standing requires a plaintiff to establish at minimum three elements: (1) she suffered an "injury in fact"; (2) a causal connection between the injury and defendant's conduct; and (3) a federal court decision is likely to redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Courts are split as to whether plaintiffs have standing to assert claims relating to products they themselves did not pur-chase, but which are substantially similar to products they did purchase. *See, e.g., Donohue v. Apple, Inc.,* 871 F.Supp.2d 913, 921–22 (N.D.Cal.2012) (collecting cases). "Some federal courts have held, as a matter of law, that a plaintiff lacks standing to assert such claims." *Brown v. Hain Celestial Grp., Inc.,* 913 F.Supp.2d 881, 889 (N.D.Cal.2012); *see Granfield v. NVIDIA Corp.,* 2012 WL 2847575, at *6 (N.D.Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."). Other courts have held that "the standing inquiry is more appropriately resolved on a motion for class certification." *Brown v. Hain Celestial Grp., Inc.,* 913 F.Supp.2d at 890. Accordingly, such courts routinely deny Rule 12(b)(1) motions to dismiss and, instead, reserve the standing analysis until a motion for class certification. *See Forcellati v. Hyland's, Inc.,* 876 F.Supp.2d. 1155, 1161 (C.D.Cal. 2012) (denying defendant's motion to dismiss because the "argument is better taken under the lens of typicality or adequacy of representation, rather than standing").

"The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Brown v. Hain Celestial Grp., Inc.,* 913 F.Supp.2d at 890. Courts have found products with only minor differences in ingredients or flavors to be substantially similar for standing purposes. *See Astiana v. Dreyer's Grand Ice Cream, Inc.,* 2012 WL 2990766, at *13 (N.D.Cal. July 20, 2012) (the fact different ice creams have different ingredients is "not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different

product flavors"); *Anderson v. Jamba Juice Co.,* 888 F.Supp.2d 1000, 1006 (N.D.Cal.2012) (plaintiff, who purchased several flavors of at-home "smoothie" kits, had standing to bring claims on behalf of purchasers of other flavors because products were sufficiently similar and "same alleged misrepresentation was on all of the smoothie kit[s] regardless of flavor"); *see also Brown v. Hain Celestial Grp., Inc.,* 913 F.Supp.2d at 890 ("Where product composition is less important, the cases turn on whether the alleged misrepresentations are sufficiently similar across product lines.").

Recently, district courts have disagreed on this issue in the specific context of glucosamine supplements. In *Pearson v. Target Corp.,* plaintiff alleged defendant violated an Illinois consumer protection statute by selling and distributing a line of glucosamine supplements it knew to be ineffective. 2012 WL 7761986, at *1 (N.D.Ill. Nov. 9, 2012). The court held the plaintiff did not have standing to assert claims relating to products he did not purchase, rhetorically asking, "how could he possibly have been injured by representations made on a product he did not buy?" *Id.; accord Padilla v. Costco Wholesale Co.,* 2013 WL 195769, at *3 (N.D.Ill. Jan. 16, 2013).

Other courts have taken a different— and, in this Court's view, better—approach. For example, in *Cardenas v. NBTY, Inc.,* 870 F.Supp.2d 984 (E.D.Cal. 2012), a consumer brought a putative class action against the seller of a line of glucosamine supplements. There, plaintiff purchased only one of eight "Osteo Bi–Flex" glucosamine products, and sought to certify a class consisting of consumers who purchased any product in the supplement line. The court, in denying defendant's motion to dismiss, found plaintiff *had* standing to assert claims relating to the product he had purchased, and noted the

court would analyze solely under Rule 23 "whether Plaintiff may be allowed to present claims on behalf of purchasers of the remaining Osteo Bi–Flex products." *Id.* at 992; *accord Aguilar v. Boulder Brands, Inc.,* 2013 WL 2481549, at *3 (S.D.Cal. June 10, 2013).

The Court finds the reasoning in *Cardenas v. NBTY, Inc.* persuasive. There is no question plaintiffs have standing to assert claims relating to the product they *did* purchase. Further, there are substantial similarities between all of defendants' Glucosamine Supplements, and the alleged misrepresentations on the labels of the Glucosamine Supplements are nearly identical. Therefore, the Court finds the appropriate time to consider whether plaintiffs can bring claims on behalf of purchasers of all of the various Glucosamine Supplements is at the class certification stage, not on a motion to dismiss. *See Cardenas v. NBTY, Inc.,* 870 F.Supp.2d at 992; *Brown v. Hain Celestial Grp., Inc.,* 913 F.Supp.2d at 890–92; *Koh v. S.C. Johnson & Son, Inc.,* 2010 WL 94265, at *3 (N.D.Cal. Jan. 6, 2010) (denying defendants motion to dismiss plaintiff's claims relating to products he did not purchase, noting "this is not a case in which plaintiff is asserting claims against defendants that never harmed him," and "defer[ing] ruling on the issue until the class certification stage"); *see also Elias v. Ungar's Food Products, Inc.,* 252 F.R.D. 233, 243 (D.N.J.2008) (granting in part motion for class certification and noting, "the fact that the named plaintiffs did not purchase some of the products at issue does not render plaintiffs' claims atypical from the potential class members nor does it defeat commonality").

Accordingly, the motion to dismiss plaintiffs' claims relating to products they did not purchase is denied.

C. *Failure to State a Claim*

1. *New York and Connecticut Consumer Protection Statutes*

 New York General Business Law § 349 provides "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." To establish a *prima facie* case under Section 349, plaintiffs must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir.2000) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). "[D]eceptive acts" are defined as acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d at 522.

 The scope of Section 349 is notably broad in three important respects. First, claims brought under Section 349 are not subject to the heightened pleading requirements set forth in Rule 9(b). *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir.2005). Second, to state a claim under Section 349, plaintiffs need not allege they relied on defendants' misrepresentations. *See Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 (2012). Third, plaintiffs need not plead defendants knew or should have known the alleged statements were false or misleading. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741.

 The Connecticut Unfair Trade Practices Act ("CUTPA") provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair

or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b(a). CUTPA is intended to be liberally construed "in an effort to effectuate its public policy goals." *Sportsmen's Boating Corp. v. Hensley*, 192 Conn. 747, 756, 474 A.2d 780 (1984) (citing Conn. Gen.Stat. § 42–110b(d)). CUTPA requires neither reliance nor "proof of intent to deceive, to defraud or to mislead." *Associated Inv. Co. Ltd. P'ship v. Williams Assoc. IV*, 230 Conn. 148, 158, 645 A.2d 505 (1994) (citations and internal alterations omitted). Additionally, CUTPA claims need not meet the heightened pleading requirements of Rule 9(b). *See Tatum v. Oberg*, 650 F.Supp.2d 185, 195 (D.Conn.2009) (quoting *Associated Inv. Co. Ltd. P'ship v. Williams Assocs. IV*, 230 Conn. 148, 158, 645 A.2d 505 (Conn.1994)).

 Under either statute, whether a particular act or practice is deceptive is usually a question of fact. *See, e.g., Sims v. First Consumers Nat. Bank*, 303 A.D.2d 288, 289, 758 N.Y.S.2d 284 (1st Dep't 2003) (Section 349); *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 228, 990 A.2d 326 (2010) (CUTPA).

Here, plaintiffs have plausibly alleged that defendant's representation that the Glucosamine Supplements "help rebuild cartilage" is false or deceptive. Plaintiffs sufficiently "point to the specific statements that form the basis" of their claims, *Pelman v. McDonald's Corp.*, 237 F.Supp.2d 512, 527 (S.D.N.Y.2003), and also state why defendant's statement is allegedly false and deceptive; *i.e.*, because "it is medically impossible to rebuild cartilage that has been damaged or destroyed simply by taking glucosamine and/or chondroitin supplements, however formulated." To support their claims, plaintiffs cite to numerous scientific studies that arguably support their conclusion that glucosamine and chondroitin products cannot reverse

the deterioration of cartilage or cause it to be rebuilt. Therefore, plaintiffs have plausibly alleged that defendant's claim that the Glucosamine Supplements "help rebuild cartilage" is false or deceptive—particularly given that plaintiffs need not meet Rule 9(b)'s heightened pleading standards.

The Court finds unavailing defendant's contention that plaintiffs' claims should be dismissed because the studies plaintiffs cite do not, in fact, support the precise propositions for which they are cited. Whether or not the studies support plaintiff's proposition that it is "biologically impossible" to rebuild cartilage is an issue of fact the Court cannot resolve on a motion to dismiss. *See Pearson v. Target Corp.,* 2012 WL 7761986, at *2 ("[W]hether or not the proffered studies are applicable to [the glucosamine supplement at issue] is a question of fact that I do not decide at this stage. The fact that these studies looked at products that shared the same active ingredients—Glucosamine, Chondroitin, and MSM—makes Plaintiff's claim facially plausible."); *Ackerman v. Coca–Cola Co.,* 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) ("whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss") (internal quotation marks omitted).

Finally, to the extent Walgreens argues plaintiffs' claims merely amount to a nonactionable "lack of substantiation" claim, that argument is also unavailing. Contrary to defendant's contentions, the thrust of plaintiffs' complaint is not merely "that Walgreens' marketing of the [Glucosamine Supplements] is deceptive because . . . the statements on the labels are not substantiated by scientific studies." Rather, plaintiffs allege the "helps rebuild cartilage" statement is affirmatively false because, as

a matter of scientific fact, it is impossible to rebuild cartilage. Further, plaintiffs cite to clinical studies that allegedly support their allegation that the Glucosamine Supplements cannot "help rebuild cartilage" under any circumstances. Therefore, the Court does not construe plaintiffs' claims as based on a nonactionable, "lack of substantiation" theory. *See Hughes v. Ester C Co.,* 930 F.Supp.2d 439, 460 (E.D.N.Y.2013).

In sum, the Court finds plaintiffs have stated plausible claims under Section 349 and CUTPA, and the motion to dismiss those claims is denied.

### 2. *Breach of Warranty*

█ To assert a breach of warranty claim under both New York and Connecticut law, a buyer must provide the seller with timely notice of the alleged breach of warranty. N.Y. U.C.C. § 2–607(3)(a) ("Where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); Conn. Gen. Stat. § 42a–2–607(3)(a) (same); *see Hubbard v. Gen. Motors Corp.,* 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996) ("Plaintiff's Complaint lacks any allegation that plaintiff notified [the seller] of the claimed defect. Accordingly, the Court grants defendant's motion to dismiss plaintiff's claims for breach of . . . warranty for failure to allege notice."); *Benchmark Bldg. Corp. v. United Builders Supply Co., Inc.,* 1992 WL 124139, at *2 (Conn.Super.Ct. May 29, 1992) ("a failure to plead compliance with the notice provision of . . . § 42a2–607(3) bars recovery in a breach of warranty action").

Here, plaintiffs have failed to allege they provided Walgreens with timely notice of the alleged breach of warranty. Accordingly, plaintiffs' breach of warranty claims are dismissed.

### 3. *Unjust Enrichment*

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances were such that equity and good conscience require defendant[ ] to make restitution." *Hughes v. Ester C Co.*, 930 F.Supp.2d at 471. Similarly, Connecticut law requires that "[p]laintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994).

Plaintiffs have alleged Walgreens benefited from plaintiffs' purchases of Glucosamine Supplements, and permitting Walgreens to retain that benefit in the event the Glucosamine Supplements do not work as advertised would be unjust. Consequently, plaintiffs have stated claims for unjust enrichment under both New York and Connecticut law.[1]

### CONCLUSION

Defendant's motion for a stay is DENIED.

Defendant's motion to dismiss the complaint is GRANTED in part and DENIED in part.

The Clerk is instructed to terminate the motions. (Docs. # 10, 13).

SO ORDERED.

---

1. The Court declines to determine at this time whether plaintiffs can recover treble or punitive damages should they prevail on any or all of their surviving claims. (*See* Def.'s Br. at 24–25).