**Brad BUONASERA, on behalf of himself and all others similarly-situated, Plaintiff,**

v.

**The HONEST COMPANY, INC., Defendant.**

**16 Civ. 1125 (VM)**

United States District Court, S.D. New York.

Signed September 23, 2016

---

Adrienne D. McEntee, Beth Ellen Terrell, Terrell Marshall Daudt & Willie PLLC, Seattle, WA, Douglas Gregory Blankinship, Todd Seth Garber, Finkelstein Blankinship, Frei–Pearson & Garber, LLP, White Plains, NY, Javier Osvaldo Hidalgo, Kim Eleazer Richman, The Richman Law Group, Brooklyn, NY, Yvette Golan, The Golan Firm, Houston, TX, for Plaintiff.

Jonathan Paul Bach, Lauren Gerber Lee, Rebecca Welsh, Cooley LLP, New York, NY, William P. Donovan, Cooley LLP, Santa Monica, CA, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

On April 20, 2016, Brad Buonasera ("Buonasera") filed an amended complaint ("Amended Complaint") on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), alleging four causes of action against The Honest Company, Inc. ("Honest"): (1) violation of New York General Business Law Section 349 ("Section 349"); (2) violation of New York General Business Law Section 350 ("Section 350"); (3) breach of an express warranty; and (4) unjust enrichment. (Dkt. No. 27.)

By letter dated May 9, 2016, Honest requested a pre-motion conference in anticipation of filing a motion to dismiss. ("May 9 Letter," on file with chambers.) In so doing, Honest attached pre-motion correspondence exchanged between the parties including Honest's letter dated March 15, 2016 and Buonasera's letter in response dated March 21, 2016. (On file with chambers.)

After reviewing this correspondence, the Court held a pre-motion conference by telephone on June 21, 2016. ("June 21 Telephone Conference," see Dkt. Minute Entry for June 21, 2016.) On that occasion, the Court indicated that while Honest may have valid grounds for dismissal of the unjust enrichment and injunctive relief claims, the Court was not persuaded that motion practice would be productive, namely because it would not resolve the entire matter. The Court suggested that the parties reserve the issues for the class certification or summary judgment stages. Honest requested full briefing on the record before the Court. The Court permitted the parties to submit an additional round of letter briefing on open issues not sufficiently addressed by the Second Circuit. (See id.)

In response to the Court's direction, Honest submitted a letter to the Court dated July 6, 2016 regarding the open issues before the Second Circuit. ("July 6 Letter," Dkt. No. 35.) Honest argues: (1) Buonasera does not have standing to bring suit for products that he did not purchase; (2) the terms, "natural," "plant-based," and without "harsh" chemicals, are too vague to be materially deceptive; and (3) the injunctive relief and unjust enrichment claims should be dismissed for the reasons

discussed during the June 21 Telephone Conference. (Id.)

By letter dated July 19, 2016, Buonasera responded to the July 6 Letter. ("July 19 Letter," Dkt. No. 37.) Buonasera contends: (1) under NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145 (2d Cir. 2012), Buonasera is permitted to bring claims concerning products he never purchased because all of the products implicate the same set of concerns as they are all similar products labeled with uniform misrepresentations; (2) whether a label is materially deceptive is a factual question that should not be addressed on a motion to dismiss; (3) injunctive relief is warranted because Buonasera would consider purchasing Honest's products in the future if they were reformulated; and (4) New York law permits a plaintiff to plead unjust enrichment as an independent or alternative theory of recovery. (Dkt. No. 37.)

The Court now construes the correspondence described above as a motion by Honest to dismiss the Amended Complaint ("Motion") on the following grounds: (1) lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b) (1)") on the basis that Buonasera lacks standing both to bring suit for products that he did not purchase and to seek injunctive relief and (2) failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") as it relates to the Section 349, Section 350, breach of an ex-

press warranty, and unjust enrichment claims. For the reasons discussed below, Honest's Motion is DENIED in part and GRANTED in part.

## I. FACTUAL BACKGROUND [1]

Buonasera is a consumer in New York who purchased Honest's Conditioning Detangler and Shampoo + Body Wash products from the Costco store located at 517 East 117th Street, New York, New York during the class period.[2] Buonasera alleges that he saw, relied upon, and reasonably believed the representation that the products were "natural" and contained "no harsh chemicals (ever!)."

Buonasera alleges that Honest falsely, misleadingly, and deceptively labels its products as "natural," "all natural," "naturally derived," "plant-based," and/or containing "no harsh chemicals ever!" when the products contain synthetic and toxic ingredients. In addition to the two products Buonasera purchased, Buonasera alleges that 39 other Honest products contain synthetic or toxic ingredients. The Amended Complaint contains a substantial list of these ingredients.

Buonasera asserts the four causes of action mentioned above and seeks: (1) class certification; (2) declaratory relief; (3) an order for accounting; (4) restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees and prejudgment interest; (5) injunctive relief; (6) statutory damages; and (7) any other relief the Court deems just and proper.

---

**1.** The factual background below, except as otherwise noted, derives from the Amended Complaint (Dkt. No. 27) and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also

Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except where specifically quoted, no further citation will be made to the Amended Complaint or the documents referred to therein.

**2.** The Court notes that the class period is not defined in the Amended Complaint.

## II. STANDARD OF REVIEW

### A. MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

The inquiry on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) concerns whether the district court has the statutory or constitutional power to adjudicate the case. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Id.; see also Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Norton v. Larney, 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). The preliminary showing that must be made by the plaintiff, however, is not meant to be overly burdensome, "allowing for subject matter jurisdiction so long as 'the federal claim is colorable.'" Cromer Fin. v. Berger, 137 F.Supp.2d 452, 467 (S.D.N.Y. 2001) (quoting Savoie v. Merchants Bank, 84 F.3d 52, 57 (2d Cir. 1996)).

### B. MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555, 127 S.Ct. 1955. The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F.Supp.2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Chambers, 282 F.3d at 152 (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)).

## III. DISCUSSION

The Court will first consider Honest's motion to dismiss for lack of standing pursuant to Rule 12(b)(1) because it raises a jurisdictional challenge. See Spiro v. Healthport Technologies, LLC, 73 F.Supp.3d 259, 266 (S.D.N.Y. 2014) ("Because it is jurisdictional, the Court first considers defendants' argument that plaintiffs lack standing."); see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) ("Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R. Civ. P., as well as on other grounds, 'the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'").

### A. MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

#### 1. Buonasera's Standing for Unpurchased Products

■ Relying on the Second Circuit's decisions in NECA–IBEW Health & Welfare

Fund v. Goldman Sachs & Co., 693 F.3d 145 (2d Cir. 2012) and DiMuro v. Clinique Labs., LLC, 572 Fed.Appx. 27 (2d Cir. 2014), Honest argues that Buonasera does not have standing to bring suit on the basis of products that he did not purchase. (See Dkt. No. 35.) On the other hand, Buonasera contends that Second Circuit precedent permits a plaintiff to bring claims for unpurchased products if all the relevant claims implicate the same set of concerns. (See Dkt. No. 37.) The Court will now turn to the issue of whether Buonasera has standing for products he did not personally purchase.

In NECA–IBEW Health & Welfare Fund, the Second Circuit held, as an initial matter, that the named plaintiffs had Article III standing to sue in their own right for the Certificates they purchased. 693 F.3d at 158. It then considered whether the plaintiff had "standing to assert class claims with respect to Certificates from the 15 Offerings, and from tranches of the 2007–5 and 2007–10 Offerings, from which it did not purchase Certificates." Id. at 157. The Court found:

> But whether NECA has "class standing"—that is, standing to assert claims on behalf of purchasers of Certificates from other Offerings, or from different tranches of the same Offering—does not turn on whether NECA would have statutory or Article III standing to seek recovery for misleading statements in those Certificates' Offering Documents. NECA clearly lacks standing to assert such claims on its behalf because it did not purchase those Certificates. Because the class standing analysis is different, the district court erred in concluding, based on the fact that NECA purchased just two "particular ... [C]ertificate[s] from ... particular tranche[s] from ... particular [T]rust[s]" that it necessarily lacked standing to assert claims on behalf of purchasers of Certificates from

other Trusts and from other tranches within the 2007–10 and 2007–5 Trusts.

Id. at 158; see also In re Frito–Lay N. Am., Inc. All Nat. Litig., No. 12 MD 2413, 2013 WL 4647512, at *11 (E.D.N.Y. Aug. 29, 2013) ("It remains undisputed that plaintiffs lack Article III standing to assert claims arising out of products that they themselves did not purchase.... But, once there is at least one named plaintiff for every named defendant 'who can assert a claim directly against that defendant, ... [Article III] standing is satisfied and only then will the inquiry shift to a class action analysis.' ") (internal citations omitted).

The plaintiff in NECA–IBEW Health & Welfare Fund argued that the determination of whether he had class standing was best suited for the class certification stage. See 693 F.3d 145 at 159 ("According to NECA, '[b]ecause the Fund's purchases of Certificates afforded [it] statutory standing under the Securities Act, and the case presented a genuine 'case or controversy' under Article III, it then became a matter of whether Rule 23 considerations could be satisfied at the proper time—not at this motion-to-dismiss stage.' ... Indeed, we have said that, '[t]o establish Article III standing in a class action ... for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis.' ") (internal citations omitted). However, the court noted the Supreme Court has recognized "some 'tension' in its case law as to whether 'variation' between (1) a named plaintiff's claims and (2) the claims of putative class members 'is a matter of Article III standing ... or whether it goes to the propriety of class certification pursuant to [Fed.R.Civ.P. 23(a) ].' " Id. at 160.

After reviewing the Supreme Court's precedent on this issue, the Second Circuit held:

> But distilling these cases down to a broad standard for class standing, we believe they stand collectively for the proposition that, in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he "personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant," and (2) that such conduct implicates "the same set of concerns" as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

Id. at 162 (internal citations omitted). To determine whether it implicates the same set of concerns, the Second Circuit instructed courts to look to the "nature and content of the specific misrepresentation alleged." Id.

In DiMuro v. Clinique Labs., LLC, the Second Circuit utilized this framework to determine whether plaintiffs had standing for four Revlon products they had not purchased. See 572 Fed.Appx. 27 (2d Cir. 2014). By summary order, the Second Circuit held that "each of the seven different products have different ingredients, and Clinique made different advertising claims for each product. Entirely unique evidence will, therefore, be required to prove that the 35–some advertising statements for each of the seven different Repairwear products are false and misleading." Id. at 29. Therefore, under the framework set out in NECA–IBEW Health & Welfare Fund, the court held that it could not say that "claims brought by a purchaser of one [Repairwear] product would raise a set of concerns nearly identical to that of a purchaser of another Repairwear product." Id. (internal quotation marks omitted). Accordingly, the plaintiffs lacked standing for the four products they did not purchase. See id.

Many lower courts have construed the Second Circuit's findings in NECA–IBEW Health & Welfare Fund and DiMuro to indicate that the issue of class standing should not be resolved on a motion to dismiss but rather on a motion for class certification. See, e.g., Ault v. J.M. Smucker Co., No. 13 Civ. 3409, 2014 WL 1998235, at *7 (S.D.N.Y. May 15, 2014) ("Whether the plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products—and whether plaintiffs will therefore adequately represent the interests of the class—is a question the Court will consider on a Rule 23 certification motion.") (internal quotation marks omitted); see also, e.g., Hidalgo v. Johnson & Johnson Consumer Companies, Inc., 148 F.Supp.3d 285, 292 (S.D.N.Y. 2015) ("Further, Article III standing is a separate issue from that of 'class standing.' . . . Thus, 'for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis.'"); In re Frito–Lay N. Am., Inc. All Nat. Litig., 2013 WL 4647512, at *12 ("NECA–IBEW thus instructs that, because plaintiffs have satisfied the Article III standing inquiry, their ability to represent putative class members who purchased products plaintiffs have not themselves purchased is a question for a class certification motion.").

For example, in Quinn v. Walgreen Co., after addressing that courts are split as to whether plaintiffs have standing for unpurchased products that are similar to purchased products, the court stated: "Accordingly, such courts routinely deny Rule 12(b)(1) motions to dismiss and, instead, reserve the standing analysis until a mo-

tion for class certification." 958 F.Supp.2d 533, 541 (S.D.N.Y. 2013). The court went on to find that "there are substantial similarities between all of defendants' [products], and the alleged misrepresentations on the labels of the [products] are nearly identical. Therefore, the Court finds the appropriate time to consider whether Plaintiffs can bring claims on behalf of purchasers of all of the [products] is at the class certification stage, not on a motion to dismiss." Id. at 542.

However, other courts have held that resolution of the standing issue is appropriate for a motion to dismiss and have ruled accordingly. See Hart v. BHH, LLC, No. 15 Civ. 4804, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016) ("The implicit lesson in DiMuro is that NECA did not give plaintiffs—and their counsel—free reign to bring lawsuits regarding products they never purchased. Here, as in DiMuro, claims brought by a purchaser of Pest Repellers would not raise 'nearly identical' concerns to the claims of a purchaser of Animal Repellers.... Thus, like the cosmetics products in DiMuro or the securities backed by loans from different originators in NECA–IBEW, unique evidence would be required to prove that Defendants' statements regarding both products were actually false or misleading.").

■ Upon review of the Second Circuit's precedent on this issue, the Court finds that Buonasera has sufficiently alleged class standing at the motion to dismiss stage. Under NECA–IBEW Health & Welfare Fund, Buonasera has class standing if (1) "he 'personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant,' and (2) ... such conduct implicates 'the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same

defendants." 693 F.3d at 162 (internal citations omitted).

First, Buonasera has alleged injury by his purchase of the two hair care products that were allegedly misrepresented. (See Dkt. No. 27 at ¶¶ 25–30.)

Regarding the second requirement, "the nature and content of the specific misrepresentation alleged," NECA–IBEW Health & Welfare Fund, 693 F.3d at 162, is similar with respect to the unpurchased products in that Buonasera alleges that these products were also labeled as "all natural," "natural," "plant-based," and contain "no harsh chemicals." (See Dkt. No. 27 at ¶¶ 36, 49.) Although the unpurchased products may contain different ingredients compared to the purchased products, see, e.g., DiMuro, 572 Fed.Appx. at 29, the Court finds that the Amended Complaint adequately alleges that the misrepresentation claimed with respect to the unpurchased products is sufficiently similar to the misrepresentation for the purchased products.

Therefore, at this stage of the litigation, the Court finds that Buonasera does have standing to seek relief for products he did not purchase and denies Honest's Motion on this basis. See Hart, 2016 WL 2642228, at *3 ("Others deny motions to dismiss so long as the products purchased by plaintiffs were sufficiently similar, finding that 'any concerns regarding the differences can be addressed at the class certification stage.'") (quoting Jovel v. i-Health, Inc., No. 12 Civ. 5614, 2013 WL 5437065, at *10 (E.D.N.Y. Sept. 27, 2013)). However, after the benefit of further discovery, the Court will permit Honest to raise this issue again at the class certification stage.

### 2. Buonasera's Standing to Seek Injunctive Relief

■ Honest contends that Buonasera lacks standing to seek injunctive relief be-

cause he does not allege that he will purchase Honest's products in the future and therefore does not have any risk of ongoing harm. (See Dkt. No. 35; May 9 Letter, on file with chambers.) Buonasera argues that injunctive relief is warranted because he would consider purchasing the products in the future if they were reformulated. (See Dkt. No. 37.) In addition, Buonasera claims that denying injunctive relief would bar any consumer who avoids the product. (Id.)

■ To establish standing in federal court, a party must meet the minimum requirements imposed by Article III of the Constitution by alleging an actual case or controversy. See City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Specifically, "a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998). A plaintiff must demonstrate standing for each claim and form of relief sought. See Spiro, 73 F.Supp.3d at 270. To satisfy the injury requirement when seeking injunctive relief, a plaintiff cannot rely on a past injury alone because " '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.' " Lyons, 461 U.S. at 102, 103 S.Ct. 1660 (citing O'Shea v. Littleton, 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). Rather, the plaintiff must "demonstrate that she is likely to be harmed again in the future in a similar way." Nicosia v. Amazon, 834 F.3d 220, 239 (2d Cir. 2016); see also Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004) ("In doing this, he 'cannot rely on past injury to satisfy the injury requirement lout must show a likelihood

that he · . . . will be injured in the future.' "); Deshawn E. by Charlotte E., 156 F.3d at 344 ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future.").

■ There is no exception to demonstrating future injury when the plaintiff is pursuing a class action. See Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 40 n.20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) ("That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks omitted). Therefore, the named plaintiffs must have standing in order to seek injunctive relief on behalf of the class. See Dodge v. Cnty. of Orange, 103 Fed.Appx. 688, 690 (2d Cir. 2004) ("[T]he named plaintiffs in this action must themselves have standing to seek injunctive relief."); see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C., 433 F.3d 181, 199 (2d Cir. 2005).

Buonasera has not alleged that he will purchase Honest's products in the future. The Amended Complaint states that Buonasera purchased Honest's Conditioning Detangler and Shampoo + Body Wash products during the class period but fails to define when the class period ended. However, it is evident that the class period does not continue until the present as Buonasera alleges that " [i]f Honest's products were reformulated such that its representations were truthful, Plaintiff would consider purchasing Honest's products in the future." (Dkt. No. 27 at ¶ 31.) This allega-

tion is insufficient to allege future injury. Therefore, since Buonasera has not demonstrated a likelihood of future injury,[3] he does not have standing to seek injunctive relief. See Nicosia, 834 F.3d at 239; Shain, 356 F.3d at 215. Furthermore, because Buonasera does not individually have standing to seek injunctive relief, he does not have standing to seek injunctive relief on behalf of a putative New York class. See Simon, 426 U.S. at 40 n.20, 96 S.Ct. 1917; Dodge, 103 Fed.Appx. at 690.

Accordingly, the Court grants Honest's Motion on this ground and dismisses Buonasera's request for injunctive relief for lack of subject matter jurisdiction pursuant to Rule 12 (b) (1).

B. **MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

1. **Buonasera's Claims Under Section 349 and Section 350 and for Breach of an Express Warranty**

In its July 6 Letter, Honest incorporates the May 9 Letter by reference and argues that several courts have held that certain terms including "natural," "plant-based," and without "harsh" chemicals are too vague to be deemed materially deceptive. (See Dkt. No. 35; May 9 Letter, on file with chambers.) Furthermore, Honest contends that when a claim is too amorphous

for a jury to determine on an objectively reasonable basis whether it is true or false, the deceptive advertising claims under Section 349 and Section 350 should be dismissed to avoid the jury making a purely subjective determination.[4] (Id.) Buonasera, on the other hand, claims that whether a label is deceptive is a factual question that should not be decided on a motion to dismiss. (See Dkt. No. 37.)

The Court will first turn to the issue of whether Buonasera has sufficiently pled a claim under Section 349 and Section 350.

a. Buonasera's Section 349 and Section 350 Claims

■ To establish a prima facie claim under Section 349, a plaintiff must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Quinn, 958 F.Supp.2d at 543 (internal quotation marks omitted); see also Catalano v. BMW of N. Am., LLC, 167 F.Supp.3d 540, 561 (S.D.N.Y. 2016). Section 350 has the same elements as Section 349 except that the plaintiff must demonstrate that the defendant's advertisement "(1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." Koch v. Greenberg, 14 F.Supp.3d 247, 261

---

**3.** Buonasera argues that he has standing to seek injunctive relief based primarily on one case from the Eastern District of New York. See Ackerman v. Coca–Cola Co., No. 09 Civ. 395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013). (See Dkt. No. 37.) However, as the Second Circuit recently confirmed in a consumer misrepresentation case, "[p]laintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury.... We agree with the district court that Nicosia did not establish a likelihood of future or continuing harm." Nicosia v. Amazon, 834 F.3d at 239 (internal citations omitted). Therefore, the Court declines to follow the reasoning in Ack-

erman as Second Circuit precedent dictates otherwise.

**4.** Honest also contends that Buonasera has not alleged that he relied on the statement that the products were "plant-based." (See Dkt. No 35.) However, the Court notes that in paragraph 28 of the Amended Complaint, Buonasera alleges that if he had known that the products were not "plant-based," he would not have purchased the products. The Court therefore finds that Buonasera sufficiently alleges reliance on this misrepresentation.

(S.D.N.Y. 2014), aff'd, 626 Fed.Appx. 335 (2d Cir. 2015) (internal quotation marks omitted); see also Weisblum v. Prophase Labs, Inc., 88 F.Supp.3d 283, 292 (S.D.N.Y. 2015) ("To state a prima facie claim under either Section [349 or 350], a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice."); 4 K & D Corp. v. Concierge Auctions, LLC, 2 F.Supp.3d 525, 547 (S.D.N.Y. 2014).

■■■■ Regarding the first criterion, Buonasera has alleged in the Amended Complaint that the deceptive acts were aimed at consumers. (Dkt. No. 27 at ¶¶ 14–15, 34–48, 50, 56.) As it relates to the third criterion, Buonasera has alleged that he was injured as a result of the material misstatement because he paid a premium for these products. (Id. at ¶¶ 30, 95); see, e.g., Segedie v. Hain Celestial Grp., Inc., No. 14 Civ. 5029, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) ("Plaintiffs have also adequately alleged injury by claiming that they paid a price premium that they would not have paid if the products were not labeled 'natural' or 'all natural.' ").

■■■■ Honest's primary argument for dismissal relates to the second criterion—whether the act is misleading in a material way. To determine whether the act is misleading or deceptive, the act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." Quinn, 958 F.Supp.2d at 543 (internal quotation marks omitted); see also New World Sols., Inc. v. NameMedia Inc., 150 F.Supp.3d 287, 328 (S.D.N.Y. 2015) (" 'To aid in the interpretation of the sec-

ond element, the New York Court of Appeals has instructed that a deceptive act or practice has an 'objective definition,' whereby deceptive acts or practices—which may be acts or omissions—are 'limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances.' ").

Courts have generally held that since this second factor requires a reasonableness analysis, it cannot be resolved on a motion to dismiss. See, e.g., Segedie, 2015 WL 2168374, at *11–*12 ("It is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients.... Ultimately, the question is one of reasonableness, which cannot be resolved on a Rule 12(b) (6) motion.... Whether the labels would mislead a reasonable consumer is a question of fact for the jury."); Ault, 2014 WL 1998235, at *6 (Regarding the use of the term 'all natural,' the court held that "the question is one of reasonability, which cannot be resolved on Defendant's motion to dismiss[.]"); Quinn, 958 F.Supp.2d at 543 ("[W]hether a particular act or practice is deceptive is usually a question of fact."); see also, e.g., Goldemberg v. Johnson & Johnson Consumer Companies, Inc., 8 F.Supp.3d 467, 480 (S.D.N.Y. 2014) ("[T]he Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer.").[5]

The Court therefore finds that whether Honest's products are misleading to a reasonable consumer is a question of fact better suited for the jury. Honest's Motion is accordingly denied on this basis.

b. Buonasera's Claim for Breach of an Express Warranty

■■■■ The Court now turns to Buonasera's claim for breach of an express

---

**5.** The Court notes that Honest fails to identify any case in the Second Circuit in which a court has ruled on a motion to dismiss that the labels are objectively unreasonable as a matter of law. (See Dkt. No. 35.)

warranty. To state a claim for breach of an express warranty, "[a] plaintiff must allege 'an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon the plaintiff's detriment.'" Ault, 2014 WL 1998235, at *6. An actionable warranty is defined by the New York Uniform Commercial Code Law Section 2–313(1) (a) as "'[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty.'" Id. However, a defendant cannot simply have made generalized statements but rather must have made a "'factual claim upon which [the plaintiff] could rely.'" Id. In Ault, the court held that whether a reasonable consumer could interpret the term "all natural" as a factual claim is a matter of fact not appropriate for a motion to dismiss. Id.; see also Goldemberg, 8 F.Supp.3d at 483 ("However, as the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the warranty claim."). Thus, the Court denies Honest's Motion to dismiss Buonasera's claim for breach of an express warranty as it raises a factual matter that is not appropriate to resolve on a motion to dismiss.

### 2. Buonasera's Claim for Unjust Enrichment

■ Finally, Honest seeks to dismiss Buonasera's claim for unjust enrichment because it is duplicative of his other causes of action. (See Dkt. No. 35.) Buonasera argues that New York law permits a plaintiff to plead unjust enrichment as an independent or an alternative theory of recovery, and the claim should therefore not be dismissed. (See Dkt. No. 37.)

■ To establish unjust enrichment, the plaintiff must demonstrate: "'(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" Mahoney v. Endo Health Sols., Inc., No. 15 Civ. 9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016).

■ However, under New York law, an unjust enrichment claim "'is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" Weisblum, 88 F.Supp.3d at 296 (quoting Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (N.Y. 2012)). If the plaintiff is simply restating a contract or tort claim, then unjust enrichment is not available. See Mahoney, 2016 WL 3951185, at *11 ("'[U]njust enrichment is not a catchall cause of action' and it 'is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'"); Koenig v. Boulder Brands, Inc., 995 F.Supp.2d 274, 290 (S.D.N.Y. 2014) ("Yet, an unjust enrichment claim cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.'").

Buonasera argues that New York law permits a plaintiff to plead unjust enrichment as an independent or alterative theory of recovery, citing TOT Payments LLC v. First Data Corp., 128 A.D.3d 468, 9 N.Y.S.3d 44 (1st Dep't 2015). However, TOT Payments merely states that the unjust enrichment cause of action was properly pleaded in the alternative and cites to one case from the First Department of the New York Appellate Division. See TOT Payments LLC., 9 N.Y.S.3d at 44. That case, IIG Capital LLC v. Archipelago, LLC, states: "'While the existence of a

valid and enforceable contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter, where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue, plaintiff may proceed upon a theory of quantum meruit and will not be required to elect his or her remedies." 36 A.D.3d 401, 829 N.Y.S.2d 10 (1st Dep't 2007).

IIG Capital LLC is irrelevant to Buonasera's claim as it relates to a plaintiff's ability to bring an unjust enrichment claim when there is a dispute about the existence of a contract or where the contract does not address the relevant dispute. In this case, Buonasera is alleging tort causes of action and is relying on the same set of facts for these causes of action as he is for the unjust enrichment claim. Because Buonasera fails to show how the unjust enrichment claim is not duplicative, it should be dismissed. See, e.g., Mahoney, 2016 WL 3951185, at *11 ("The defendants' motion to dismiss the unjust enrichment claim is granted.... Here, the accusations surrounding the plaintiff's unjust enrichment claim overlap with her fraud, fraudulent concealment, express warranty, and § 349 claims, all of which may proceed. She therefore may not bring an unjust enrichment claim as a catchall cause of action where she adequately pleads that the defendants committed the recognized tort of fraud and breached an express warranty."). Accordingly, Honest's Motion is granted on this basis.

## IV. ORDER

For the reasons stated above, it is hereby

ORDERED that the Motion (Dkt. No. 35) of defendant The Honest Company Inc. ("Honest") to dismiss the Amended Complaint (Dkt. No. 27) of plaintiff Brad Buonasera ("Buonasera") on behalf of himself and all others similarly situated (collectively, "Plaintiffs") is **GRANTED** in part as to the unjust enrichment and injunctive relief claims and **DENIED** in part as to the remaining claims.

**SO ORDERED.**