LOUIS L. STANTON, U.S.D.J.
Plaintiff Markeith Parks brought this putative class action, on behalf of himself *244 and all others similarly situated, against Defendant Ainsworth Pet Nutrition, LLC and its wholly owned subsidiary, Rachael Ray Nutrish (collectively, "Rachael Ray Nutrish"), alleging claims of deceptive business practices and false advertising under the New York General Business Law, breach of express warranty, and unjust enrichment. Defendant moves to dismiss the complaint, or alternatively, stay the action until the Food and Drug Administration ("FDA") issues guidance regarding the use of the term "natural" in food labeling. For the reasons that follow, the motion to dismiss the complaint is granted.
BACKGROUND
The following facts are as alleged in the Complaint (Dkt. No. 1).
Defendant Rachael Ray Nutrish is a Pennsylvania corporation that manufactures, markets, and distributes a line of Super Premium Food for Dogs ("Products") in retail stores in New York and throughout the United States. Id. 11 3 fig. 1, 19-20. Although Rachael Ray Nutrish labels and advertises the Products as "natural," tests conducted by an independent laboratory revealed that glyphosate, an herbicide, is present in the Products. Id. ¶¶ 3-4, 6-7, 43. The Products do not disclose the presence of glyphosate. Id. 11 7, 31.
Plaintiff Markeith Parks is a citizen of New York who purchased the Products on multiple occasions at a BJ's Wholesale Club in the Bronx, New York. Id. 1 21. Parks relied on the representation that the Products were "natural" when he purchased them, and was willing to pay more for the Products because he expected them to be free of pesticides and other unnatural chemicals. Id. 11 13, 22-23.
DISCUSSION
Preemption
Defendant argues that Plaintiff's claims should be dismissed because they are expressly preempted by federal law. Def. Br. at 20-21. "The Supremacy Clause provides that '[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' " Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981) (quoting Art. VI, cl. 2) (alteration and omissions in original). "It is basic to this constitutional command that all conflicting state provisions be without effect." Id.
In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.
New York SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010). "The key to the preemption inquiry is the intent of Congress." Id."Congress may manifest its intent to preempt state or local law explicitly, through the express language of a federal statute, or implicitly, through the scope, structure, and purpose of the federal law." Id. The Supreme Court has stated,
in all pre-emption cases, and particularly those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers *245 of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.
Wyeth v. Levine, 555 U.S. 555, 565, 129 S.Ct. 1187, 1195, 173 L.Ed.2d 51 (2009) (internal quotations, citations, and alterations omitted). Courts "have a duty to accept the reading that disfavors preemption" when such a reading is plausible. Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449, 125 S.Ct. 1788, 1792, 161 L.Ed.2d 687 (2005).
The Federal Food, Drug, and Cosmetics Act ("FDCA"), enacted in 1938, grants the FDA power to ensure that "foods are safe, wholesome, sanitary, and properly labeled," and prohibits the misbranding of food in interstate commerce. 21 U.S.C. §§ 331(a) - (c), 393(b)(2)(A). In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought "to clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." Pub. L. No. 101-535, 104 Stat. 2353 (1990) (codified at 21 U.S.C. § 343 et seq. ); H.R. Rep. No. 101-538 (1990).
"Consistent with the statute's purpose of promoting uniform national labeling standards, the NLEA includes an express preemption provision that forbids the states from 'directly or indirectly establish[ing] ... any requirement ... made in the labeling of food that is not identical to' the federal labeling requirements established by certain specifically enumerated sections of the FDCA." Koenig v. Boulder Brands, Inc., 995 F.Supp.2d 274, 280 (S.D.N.Y. 2014) (quoting 21 U.S.C. § 343-1 (a) ). "Helpfully, the NLEA is clear on preemption, stating that it 'shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [ 21 U.S.C. § 343-1(a) ] of the [FDCA]." New York State Restaurant Ass'n v. New York City Bd. of Health, 556 F.3d 114, 123 (2d Cir. 2009) (alterations and emphasis in original) (quoting Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364).
Under the NLEA's preemption provision, state labeling requirements that are "not identical to" the federal labeling requirements in§§ 343(b), (c), (d), (e), (f), (g), (h), (i), (k), (q), (r), (w), and (x) are preempted. 21 U.S.C. § 343-1(a). Notably, the preemption provision does not mention § 343(a), which states, "A food shall be deemed to be misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. §§ 343(a), 343-1(a) ; see Manuel v. Pepsi-Cola Co., 17 Civ. 7955, 2018 WL 2269247, at *4 (S.D.N.Y. May 17, 2018) ("Significant here, the NLEA's preemption provision does not apply to § 343(a)").
Defendant argues that Plaintiff's claims are expressly preempted by the FDCA because "Plaintiff's allegations that state law imposes a duty to disclose the alleged presence of glyphosate residue would create food labeling requirements not identical to federal regulation." Def. Br. at 22. However, Plaintiff does not seek a requirement to disclose the presence of glyphosate, but rather "seeks only that Rachael Ray Nutrish remove the word 'Natural' from its marketing ...." Pl. Br. at 33. Although the Complaint mentions that Defendant did not disclose the presence of glyphosate and that the failure to disclose is "an omission of material fact," compl. ¶¶ 31, 35, it focuses on the allegation that labeling the Products as "natural" is false and misleading. For instance, Plaintiff alleges,
Rachael Ray Nutrish aggressively advertises and promotes the Products as "Natural." These claims are false, deceptive, and misleading. The Products at *246 issue are not "Natural." Instead, the Products contain the unnatural chemical glyphosate, a potent biocide and endocrine disruptor, with detrimental health effects that are still becoming known.
Id. 11 3-4. Additionally, under the cause of action for a violation of the New York General Business Law ("NYGBL"), he states "Defendant's improper consumer-oriented conduct - including labeling and advertising the Products as being 'Natural' - is misleading in a material way ...." and "Plaintiff and the New York Sub-Class Members have been injured inasmuch as they paid a premium for products that were - contrary to Defendant's representations - not 'Natural.' " Id. 11 105-06. Therefore, because the NLEA preemption provision does not apply to § 343(a), the prohibition on false or misleading labeling, Plaintiff's state law claims that the labeling of the Products was false and misleading are not preempted. See Axon v. Citrus World, Inc., 354 F.Supp.3d 170, 180 (E.D.N.Y. 2018) (finding that plaintiff's claims against "Florida's Natural" brand orange juice were not preempted because plaintiff was "not seeking the mandatory disclosure of glyphosate" but rather the removal of the "natural" label, and distinguishing from Gibson v. Quaker Oats, No. 16 Civ. 4853, 2017 WL 3508724 (N.D. Ill. Aug. 14, 2017), in which the "plaintiffs were seeking disclosure of glyphosate").
Defendant also argues that Plaintiff's claims are preempted by the FDA's statement, "When we established our policy concerning the term 'natural,' ... it was not intended to address food production methods, such as ... the use of pesticides, ... nor did it explicitly address food processing or manufacturing methods ...." Def. Br. at 23 (citing Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69,905 (Nov. 12, 2015) ). The FDA made that statement in its request for public comments on the use of the term "natural" in food labeling; it is not a rule or regulation regarding pesticides in foods labeled "natural" and does not have preemptive effect.
Failure to State a Claim
On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. Kelly-Brown v. Winfrey, 717 F.3d 295, 304 (2d Cir. 2013). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).
A. New York General Business Law §§ 349 and 350
Plaintiff alleges that Defendant engaged in consumer fraud in violation of New York General Business Law Sections 349 and 350. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Id. § 350. "To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.' "
*247 Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015) (quoting Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 (2012) ). "The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) (citation and internal quotation marks omitted).
In the FDA's request for public comment on the meaning of "natural" in food labeling, the FDA stated,
We have a longstanding policy for the use of the term "natural" on the labels of human food. We previously considered establishing a definition for the term "natural" when used in food labeling. In the preamble of a proposed rule we published in the Federal Register ( 56 FR 60421, November 27, 1991), we stated that the word "natural" is often used to convey that a food is composed only of substances that are not manmade and is, therefore, somehow more wholesome. We also said that we have not attempted to restrict use of the term "natural" except for added color, synthetic substances, and flavors under § 101.22 ( 21 CFR 101.22 ) ( 56 FR 60421 at 60466 ). Further, we said that we have considered "natural" to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there ( 56 FR 60421 at 60466 ).
Use of the Term "Natural" in the Labeling of Human Food Products, 80 Fed. Reg. at 69,906. The FDA also stated that when it established that policy, "it was not intended to address food production methods, such as the use of genetic engineering or other forms of genetic modification, the use of pesticides, or the use of specific animal husbandry practices ...." Id. See Axon, 354 F.Supp.3d at 183 ("It is far more misleading to call a product 'natural' when the defendant has introduced unnatural ingredients than it is to call a product 'natural' when it contains trace amounts of a commonly used pesticide introduced early in the production process."); cf. Buonasera v. Honest Co., Inc., 208 F.Supp.3d 555, 559 (S.D.N.Y. 2016) (denying motion to dismiss claims alleging that hair care and body wash products labeled as "natural" violate the NYGBL for containing synthetic and toxic ingredients).
Parks asserts that the Products contain trace amounts of glyphosate, but not that the Products are composed of unnatural ingredients. Moreover, Plaintiff does not set forth in his complaint the amount of glyphosate in the Products or whether that amount is harmful or innocuous. He argues that "[if] glyphosate is in the Products at any level ... then the Products cannot be called 'Natural.' " Pl. Br. at 9 (emphasis in original). But a reasonable consumer would not be so absolutist as to require that "natural" means there is no glyphosate, even an accidental and innocuous amount, in the Products. See Axon, 354 F.Supp.3d at 183 ("Given the widespread use of herbicides, the court finds it 'implausible that a reasonable consumer would believe that a product labeled ['Florida's Natural'] could not contain a trace amount of glyphosate that is far below the amount deemed tolerable by the FDA") (alteration in original) (quoting In re General Mills Glyphosate Litig., 16 Civ. 2869, 2017 WL 2983877, at *5 (D. Minn. July 12, 2017) ); General Mills, 2017 WL 2983877, at *6 (stating that "[i]t is implausible that a reasonable consumer would believe that a product labelled as having one ingredient - oats - that is "100% Natural" could not contain a trace amount of glyphosate that is far below the amount *248 permitted for organic products" and that "[i]t would be nearly impossible to produce a processed food with no trace of any synthetic molecule").
To state a claim under NYGBL § 349 or § 350, Plaintiff must allege that Defendant engaged in conduct that is "materially misleading." Orlander, 802 F.3d at 300 (quoting Koch, 18 N.Y.3d at 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 ). "A material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." Bildstein v. MasterCard Int'l Inc., 329 F.Supp.2d 410, 414 (S.D.N.Y. 2004) (citations and internal quotation marks omitted). The presence of negligible amounts of glyphosate in a dog food product that do not have harmful, "toxic," or "carcinogenic" effects is not likely to affect consumers' decisions in purchasing the product and is thus not material. Pl. Sur-reply Br. at 5.[1]
Thus, Plaintiff's NYGBL claims are dismissed without prejudice and with leave to replead facts supporting an inference that there was a material amount of glyphosate in the Products.
B. Breach of Express Warranty
Under New York law, "[t]o state a claim for breach of express warranty, plaintiff must allege that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." DiBartolo v. Abbott Labs., 914 F.Supp.2d 601, 625 (S.D.N.Y. 2012) (citations and internal quotation marks omitted). "Generalized statements by a defendant, however, do not support an express warranty claim if they are such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." Sitt v. Nature's Bounty, Inc., 15 Civ. 4199, 2016 WL 5372794, at *15 (E.D.N.Y. Sept. 26, 2016) (citations and internal quotation marks omitted).
For the same reasons discussed above, a reasonable consumer would not interpret the label "natural" as warranting that the Products contain no amount of glyphosate. The presence of unspecified trace amounts of glyphosate is not a breach of warranty that the Products are "natural." The claim is dismissed without prejudice and with leave to replead.
C. Unjust Enrichment
Under New York law, "[u]njust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Bautista v. CytoSport, Inc., 223 F.Supp.3d 182, 194 (S.D.N.Y. 2016) (citation and internal quotation marks omitted). "Courts will routinely dismiss an unjust enrichment claim that simply duplicates, or replaces, a conventional contract or tort claim." Id. (citation and internal quotation marks omitted).
Plaintiff's unjust enrichment claim that Defendant was enriched at Plaintiff's expense through payment for the Products duplicates his other claims based on the same alleged misrepresentation that the Products are "natural," and is therefore *249 dismissed. See Buonasera, 208 F.Supp.3d at 568 (dismissing unjust enrichment claim because plaintiff also asserted claims of deceptive acts, false advertising, and breach of express warranty based on the same misrepresentations that hair care and body wash products were "natural," "is relying on the same set of facts for these causes of action as he is for the unjust enrichment claim," and "fails to show how the unjust enrichment claim is not duplicative").
Injunctive Relief
Defendant argues that Plaintiff's request for injunctive relief should be dismissed because Plaintiff has not alleged a threat of future injury. "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016). "Where there are no allegations that Plaintiff will purchase the defendant's 'products in the future,' the request is based on past injury and injunctive relief is improper." DaCorta v. AM Retail Group, Inc., 16 Civ. 1748, 2018 WL 557909, at *4 (S.D.N.Y. Jan. 23, 2018) (quoting Buonasera, 208 F.Supp.3d at 564 ).
Plaintiff has not alleged a risk of future harm, as he does not state that he or the proposed class members will purchase the Products in the future. Instead, he alleges that if he knew the Products contained glyphosate, he would not have purchased or continued to purchase them. Compl. ¶ 24. See DaCorta, 2018 WL 557909, at *4 (finding that "the claim that she would not have purchased the boots 'but for Bass's false misrepresentation of the former/original price' " was "effectively a concession that she does not intend to purchase the product in the future"). Plaintiff's statement that "If Rachael Ray Nutrish's Products were reformulated such that Rachael Ray Nutrish's representations were truthful, i.e., such that its Products were 'Natural' and contained no glyphosate, Parks would consider purchasing Rachael Ray Nutrish's Products in the future" (id. ¶ 25) does not allege future injury. See Buonasera, 208 F.Supp.3d at 564-65 (holding that the allegation "If Honest's products were reformulated such that its representations were truthful, Plaintiff would consider purchasing Honest's products in the future" is "insufficient to allege future injury"). Accordingly, Plaintiff does not have standing to seek injunctive relief.
Personal Jurisdiction Over Non-New York Residents
As a Pennsylvania corporation, Defendant argues that the court lacks personal jurisdiction over it with respect to claims of out-of-state class members who were injured outside of New York. Defendant relies on the case Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco Cty., --- U.S. ----, 137 S.Ct. 1773, 1775-76, 198 L.Ed.2d 395 (2017), in which the Supreme Court held that a California state court lacked personal jurisdiction over an out-of-state pharmaceutical company in a mass tort action with respect to claims made by out-of-state plaintiffs who did not have "any adequate link" to California. However, the majority stated, "since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." Id. at 1783-84. Additionally, Justice Sotomayor's dissent pointed out, "The Court today does not confront the question whether its opinion here would also *250 apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." Id. at 1789 n.4.
"No circuit court has yet addressed this question, and the district courts are in disagreement." Suarez v. California Natural Living, Inc., 17 Civ. 9847, 2019 WL 1046662, at *6 (S.D.N.Y. Mar. 5, 2019). "Some district courts have declined to extend Bristol-Myers to federal class actions, noting that the differences between a class action and a mass tort action are meaningful for purposes of personal jurisdiction." Gonzalez v. Costco Wholesale Corp., 16 Civ. 2590, 2018 WL 4783962, at *7 (E.D.N.Y. Sept. 29, 2018). "[H]owever, other courts have dismissed class-action claims based on the Supreme Court's holding in Bristol-Myers." Id. at *8.
The consideration of this question will be deferred unless and until Plaintiff makes a motion for class certification. See id. ("because of the 'unsettled nature of the law following Bristol-Myers' - specifically its applicability to federal class actions - this court will defer its resolution of this issue until Plaintiff files a motion for class certification, if she does in fact decide to do so") (quoting Campbell v. Freshbev LLC, 322 F.Supp.3d 330, 337 (E.D.N.Y. 2018) ); Suarez, 2019 WL 1046662, at *6 ("the Court need not assess personal jurisdiction over plaintiff's putative out-of-state class action claims unless and until the Court decides a class comprising out-of-state class members merits certification").
CONCLUSION
Defendant's motion to dismiss the complaint (Dkt. No. 15) is granted, with leave to amend the claims of violations of the NYGBL and breach of express warranty. In light of that disposition, it is unnecessary at this time to address Defendant's alternative request for a stay of this action pending the FDA's guidance on the use of the term "natural" in food labeling.
So ordered.

Plaintiff alleges in his complaint that "[g]lyphosate has been shown to cause liver disease in rats at levels far lower than is allowed by the EPA," and that the amount of glyphosate in the Products exceeds that low level. Compl. ¶¶ 51-53. In support of that assertion, Plaintiff cites to "Exhibits A and B, annexed hereto" (id. ¶ 53), but does not attach Exhibit A or B to its complaint or motion papers.